UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **VICTORIA C. FRAZIER** | * | **CIVIL ACTION NO. 12-1728** |
| **VERSUS** | * | **JUDGE DONALD E. WALTER** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

Victoria C. Frazier protectively filed the instant application for Title II Disability Insurance Benefits on February 3, 2010. (Tr. 91). She alleged disability as of December 31, 2009, because of major depressive disorder. (Tr. 120, 113). The claim was denied at the initial stage of the administrative process. (Tr. 42-48). Thereafter, Frazier requested and received a July 19, 2010, hearing before an Administrative Law Judge ("ALJ"). (Tr. 20-41). In a December 8, 2010, written decision, however, the ALJ determined that Frazier was not disabled under the Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that exists in substantial number in the national economy. (Tr. 5-16). Frazier appealed the adverse decision to the Appeals Council. On May 25, 2012, however, the Appeals

Council denied Frazier's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On June 16, 2012, Frazier sought review before this court. She contends that the Commissioner erred because she failed to give effect to post-ALJ-decision evidence that she submitted to the Appeals Council.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical

or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### ALJ's Findings

**I.     Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that Frazier had not engaged in substantial gainful activity during the relevant period. (Tr. 10). At step two, he found that she suffers severe impairments of osteoarthritis, hypertension, and a major depressive disorder. *Id*. He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 10-12).

**II.    Residual Functional Capacity**

The ALJ next determined that Frazier retained the residual functional capacity to perform medium work,[1] except that she experienced marked limitations in her ability to understand,

---

[1] Medium work is defined and explained by Social Security Ruling 83-10:
> [t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to

remember, and carry out detailed instructions, with the ability to perform only simple, unskilled work. (Tr. 12). She also had marked limitations in her ability to interact with coworkers, and moderate limitations in her ability to maintain attention and concentration, interact with the public, and to set goals independently. *Id*.

### III.     Steps Four and Five

The ALJ concluded at step four of the sequential evaluation process that Frazier was unable to perform her past relevant work. (Tr. 15). Accordingly, he proceeded to step five. At this step, the ALJ determined that Frazier was an individual of advanced age, with limited education, and that transferability of skills was immaterial. *Id*. He observed that given Frazier's vocational factors, and if she were capable of the full range of medium work, the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. § 404.1569; Rule 203.12, Table 3, Appendix 2, Subpart P, Regulations No. 4. (Tr. 16-17). However, because Frazier's residual functional capacity did not permit her to perform the full range of medium

---

> the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist). Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward). However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling 83-10.

work, the ALJ consulted a vocational expert ("VE") to determine whether, and to what extent her additional limitations eroded the occupational base for unskilled medium work. In response, the VE identified the representative jobs of kitchen helper, *Dictionary of Occupational Titles* ("DOT") Code # 318.687-010, and hospital housekeeper, DOT Code # 323.687-010, that were consistent with the ALJ's RFC and Frazier's vocational profile.[2]

## Analysis

Plaintiff contests the ALJ's RFC because of the Commissioner's alleged failure to give effect to the evidence that she submitted in the first instance to the Appeals Council. Before considering the significance of the new evidence, however, the court initially observes that there is substantial record evidence to support the ALJ's RFC.

At the request of the state agency, Frazier underwent an April 7, 2010, consultative physical examination with David Hebert, M.D., who noted that her chief complaints were major depressive disorder, hypertension, and chronic neck pain. (Tr. 201-204). She reported neck pain for the past two years, and that her right hand was weak and numb. *Id*. She informed Hebert that she had been told not to lift more than ten pounds. *Id*. She also reported severe depression. *Id*. According to Frazier, her neck problems prevented her from any serious lifting of more than fifteen pounds. *Id*.[3] Frazier further reported chest pain upon exertion. *Id*. She also complained of chronic low back pain. *Id*. During the examination, she rocked back and forth constantly, and

---

[2] The VE testified that for the kitchen helper job, there were 5,081 positions regionally and 374,498 positions nationally. For the housekeeper job there were 1,200 such positions regionally and 74,831 nationally. (Tr. 16, ). This incidence of jobs constitutes a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

[3] Nevertheless, Hebert noted that she had no history of neck pain, stiffness, or decreased motion to the neck. *Id*.

had a flat affect. *Id*.

Upon examination, Hebert noted that Frazier exhibited no difficulty with ambulation. *Id*. Frazier also demonstrated a full range of motion of the lumbar spine. *Id*. Her gait and station were completely normal, without assistive devices. *Id*. She had a full range of motion in all of her peripheral joints, with no motor or sensory deficits, and 5/5 motor strength. *Id*. X-rays of the cervical spine showed that the spaces were well maintained, but several of the cervical vertebrae had minimal osteophyte formation. *Id*.

Hebert diagnosed mild osteoarthritis of the cervical spine, which he believed was causing more of a chronic pain syndrome than actually affecting function of the cervical spine. *Id*. He also diagnosed history of major depressive disorder, versus schizophrenia. *Id*. Physically, he saw no reason why Frazier could not perform routine walking, sitting, standing, carrying, and lifting for an eight hour day. *Id*. He noted, however, that her mental status required further evaluation. *Id*. He recommended obtaining her medical records from mental health, or ordering a new psychiatric evaluation. *Id*.[4]

The state agency heeded Dr. Hebert's recommendation, and proceeded to obtain Frazier's treatment records from Ruston Mental Health for the period from 2006 until February 2010. (Tr. 138-178). Treatment records from April 25, 2007, reveal that an Office of Mental Health physician assigned Frazier a Global Assessment of Functioning ("GAF") score of 65. (Tr. 155).[5]

---

[4] On April 22, 2010, non-examining agency physician, Johnny Craig, M.D., reviewed the record and Dr. Hebert's report. (Tr. 206). He opined that Frazier's physical impairments were non-severe. *Id*.

[5] "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" *Boyd*, 239 F.3d at 701 n2 (citing AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (*DSM-IV*)). A GAF score of 61-70 indicates "**[s]ome mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social**

A December 13, 2007, progress note indicates that Frazier had recently started working at U-Rental approximately two months earlier. (Tr. 175).

A physician update note from February 18, 2009, reflects a diagnosis for major depressive disorder, with psychotic features (in remission). (Tr. 150). Frazier was doing well on her medication, sleeping well, with no hallucinations. *Id*. The physician assigned a GAF of 70. *Id*. On March 18, 2009, Mental Health noted that Frazier loved her job. (Tr. 169). She appeared to be stable on her medication. *Id*. On May 13, 2009, Frazier reported no problems, or stressors. (Tr. 169). She was doing well, and continued to maintain full time employment. *Id*.

On September 29, 2009, Frazier's therapist noted that she continued to enjoy her job, that she got along well with family members, and continued church activities and socialization. (Tr. 164). On December 21, 2009, Plaintiff reported that she had been seeing things for around two days during the period that her niece was missing. (Tr. 162).

On January 19, 2010, Frazier informed her counselor that she had lost her job because of her inability to concentrate. (Tr. 162). She said that she had not been doing well for the past month. *Id*. She also was seeing bugs. (Tr. 168).

On February 2, 2010, Frazier was rocking a lot during her counseling session, but not for the whole time. (Tr. 160). Her lack of a job was a stressor. *Id*. Frazier also saw Roy Braswell, M.D. (Tr. 161). He noted that for the past two months, she had heard voices occasionally. *Id*. He added Trazodone to her regimen. *Id*.

On March 11, 2010, non-examining agency psychologist, Jack Spurrier, Ed.D., reviewed the record and completed a Psychiatric Review Technique form. (Tr. 182-195). He found that

---

**occupational, or school functioning** (e.g., occasional truancy, or theft within the household), **but generally functioning pretty well, has some meaningful interpersonal relationships**." *DSM-IV*, pg. 32.

Frazier suffered from a depressive syndrome with sleep disturbance, difficulty concentrating or thinking, and hallucinations. *Id*. Spurrier also completed a Mental Residual Functional Capacity Assessment. (Tr. 196-199). He opined that Frazier was moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, and to respond appropriately to changes in the work setting. *Id*.

In his decision, the ALJ reviewed the available evidence, including the findings of the consultative physician, the non-examining agency physician, and the non-examining agency psychologist.[6] The ALJ accorded "some weight" to the foregoing opinions, but ended up assigning greater limitations of functioning per his RFC. Indeed, the ALJ's RFC is further supported by Frazier's own testimony. At the hearing, Frazier confirmed that, other than her mental health issues, she had no other problems that would affect her ability to return to work. (Tr. 27-29). She agreed that, physically, she was all right, and able to sit, stand, and walk. *Id*. As for her mental impairment, Plaintiff stated that she lost her job in December 2009 because she almost had a nervous breakdown, and experienced difficulty remembering what she was supposed to do. (Tr. 26).

The court observes, however, that Frazier's difficulties in December 2009 appear to have stemmed from the temporary disappearance of her niece, and thus, were situational. *See* discussion, *supra*. Moreover, the ALJ credited Plaintiff's mental impairment and assigned significant limitations of functioning that precluded her from performing her past relevant work. Nonetheless, the ALJ consulted a VE, who opined that the significant mental limitations would

---

[6] He noted that there were no records from any treating sources regarding Frazier's functional limitations. (Tr. 14).

not preclude Frazier from making an adjustment to other work. *See* discussion, *supra*.[7] In fact, Plaintiff also apparently believed that she was able to perform other work because she applied for other jobs at finance companies and fast food restaurants. (Tr. 30).[8]

In the aftermath of the ALJ's decision, plaintiff submitted additional evidence to the Appeals Council. (Tr. 207-221). The post-ALJ decision evidence includes an April 13, 2011, To Whom it May Concern letter from Frazier's treating physician, Rel Gray, M.D., in which he wrote that Frazier had been a patient for the past 20+ years. (Tr. 209-210). Her diagnoses included hypertension, mood and anger control disorder, low estrogen syndrome, and possible cervical disc syndrome. *Id*. Her problems with her neck and shoulder pain began in 1998, without a cognizable precipitating event. *Id*. He noted that this set of painful symptoms had been discussed and addressed at every medical visit since 1999. *Id*. He remarked that Frazier lives with a mild degree of constant, chronic pain. *Id*.

Gray further wrote that in 1998, Frazier began to notice increased moodiness and anger control issues. *Id*. Her psychiatric problems and medication primarily were managed by the Ruston Mental Health Clinic, but discussed at all office visits with Gray. *Id*. He noted that in the

---

[7] In her brief, Plaintiff highlights two hypotheticals to the VE that included limitations of functioning not included in the ALJ's RFC. One of the hypotheticals assumed a worker who had a marked limitation in her ability to interact appropriately with supervisors. *See* Tr. 40. However, Plaintiff indicated that she got along well with authority figures, including "bosses." (Tr. 101). Another hypothetical assumed the inability to remember what to do, and the need for detailed, written instructions each day. (Tr. 40-41). The ALJ's RFC, however, included the ability to perform only simple, unskilled work. Moreover, a hypothetical need only reasonably incorporate the disabilities and limitations recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). Here, the hypotheticals that the ALJ posed to the VE faithfully incorporated all of the limitations recognized in his residual functional capacity assessment, which is supported by substantial evidence.

[8] There is no evidence that her inability to obtain a job was the result of her impairments.

past two years, she had developed increasing problems with flat affect, slow cognition and thinking, listless movements, and a hint of extra-pyramidal speech and gait problems. *Id*. Gray concluded that Frazier no longer was able to hold a job of any type, secondary to her mental illness, and the side effects of her medication. *Id*. He reiterated that she was medically disabled, permanently. *Id*.

Plaintiff also submitted some medical records from March, 2012 that reflected a diagnosis for acute ischemic CVA. (Tr. 217). She also included a terse March 15, 2012, note from Michael E. Ehrlich, M.D., wherein he stated that Frazier was "unable to work due to stroke. *Id*.[9]

Plaintiff contends that the new evidence that she submitted to the Appeals Council is inconsistent with the ALJ's RFC, and that the Appeals Council committed reversible error by not giving effect to this new evidence.[10] According to the Hearings, Appeals and Litigation Law Manual ("HALLEX"), the Appeals Council is obliged to address additional evidence or legal arguments submitted by a claimant in his request for review. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (citing HALLEX § I-3-501). In 1995, however, the Executive Director of the Office of Appellate Operations suspended "the requirement for a detailed discussion of

---

[9] In October 2012, Plaintiff petitioned this court for leave to supplement the administrative record with additional evidence. [doc. # 5]. The evidence included copies of documents that already were in the administrative record, plus a September 10, 2012, letter from Rel Gray, M.D., describing the effects from Plaintiff's CVA (stroke) that she suffered in March 2012. *Id*. On October 16, the court denied plaintiff's motion for leave to supplement the record, but noted that Plaintiff could revisit the issue in her brief. (Oct. 16, 2012, Order [doc. # 8]). In her brief, however, Plaintiff withdrew her request to supplement the record. (Pl. Brief, pg. 3).

[10] Here, the Appeals Council issued its rote denial: "we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 1-2).

additional evidence and for specific responses to contentions in denial notices." *See* HALLEX, § I-3-5-90, http://www.ssa.gov/OP_Home/hallex/I-03/I-3-5-90.html. There is no indication that the suspension has been lifted.

Moreover, in the Fifth Circuit, evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision. *See Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); *Higginbotham v. Barnhart*, 163 Fed. Appx. 279, 2006 WL 166284 (5th Cir. 1/10/2006) (unpubl.) ("*Higginbotham II*").[11] Rather, the evidence constitutes part of the instant record and provides a basis for remand so long as it is new, material and related to the period on or before the date of the ALJ's decision. *See Higginbotham, supra*; 20 C.F.R. § 404.970(b).[12] To be considered "material," the evidence must be relevant, probative, and reasonably likely to have changed the outcome of the Commissioner's determination. *See Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989).

The court is not persuaded that the new evidence satisfies the requisite criteria. Evidence regarding Plaintiff's March 2012 stroke (and resulting limitations) addresses developments that occurred after the ALJ's decision, and therefore, does not provide a basis for reversal and/or

---

[11] The Fifth Circuit has approved the courts' practice of assigning reasons for discounting the significance of evidence that was submitted to the Appeals Council in the first instance. *See e.g.*, *Higginbotham II, supra*; *Garth v. Astrue*, 393 F. App'x 196, 199 (5th Cir. Aug. 26, 2010) (unpubl.).

[12] *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record. *See Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia*, *Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)). Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period. *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

remand. Instead, the evidence supports no more than a "later-acquired disability or . . . the subsequent deterioration of the previously non-disabling condition . . ." *See Haywood v. Sullivan*, 888 F.2d 1463, 1471-1472 (5th Cir. 1989) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir.1985) (internal quotation marks omitted)); *see also Hammond v. Barnhart*, 132 Fed. Appx. 6 (5th Cir. May 17, 2005) (unpubl.) (medical evidence that post-dates the ALJ's decision is only material if it addresses the severity of the claimant's pre-hearing condition).[13]

With regard to Dr. Gray's April 2011 statement that Frazier was disabled and unable to work, the undersigned observes that such statements do not constitute medical opinions, and therefore, are afforded no special significance under the regulations. 20 C.F.R. § 404.1527(e); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). Furthermore, there is no evidence that Gray even saw Frazier during the relevant period, i.e., from December 31, 2009, until December 8, 2010. *See e.g.*, Tr. 117 (indicating that Frazier last saw Dr. Gray in 2009). In short, the evidence is not material, and does not provide grounds for reversal or remand.

## Conclusion

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Plaintiff was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, in its entirety, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written

---

[13] Although not relevant to the current application and appeal, this evidence may support a new claim/application. *Johnson, supra*.

objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 9th day of July 2013.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE